**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ROY JACKSON PIERCE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-03-0313 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

The petitioner, Roy Jackson Pierce, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2000 state felony conviction for assault. The respondent has moved for summary judgment, (Docket Entry No. 47), and filed a copy of the state court record. Pierce filed a response. (Docket Entry No. 51). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

**I.      Procedural Background**

On January 11, 2000, Pierce was indicted for an assault on a public servant that allegedly occurred on December 15, 1999. He was also indicted for bond jumping and aggravated assault. The indictments included four enhancement paragraphs asserting the following prior convictions:

(1)  burglary of a habitation on May 2, 1989 (Cause Number 529310 in the 351st District Court of Harris County, Texas);

(2)  possession of a controlled substance on May 2, 1989  (Cause Number 529309 in the 351st District Court of Harris County, Texas);

(3)  aggravated robbery on November 17, 1980  (Cause Number 318896 in the 230th District Court of Harris County, Texas); and

(4)  aggravated kidnapping on November 17, 1980  (Cause Number 318893 in the 230th District Court of Harris County, Texas).

On June 1, 2000, Pierce signed a scheduling order stating that he had reached a plea bargain.  On June 15, 2000, Pierce pleaded guilty to the felony offense of assault.  (Cause Number 00-01-00156-CR).  Pierce also pleaded true to the first enhancement paragraph, alleging a prior conviction for burglary of a habitation in Cause Number 529310.  (Clerk's Record, Vol. I, p. 11).  The trial court sentenced Pierce to a fifteen-year prison term.  On August 17, 2000, the court conducted a hearing on Pierce's motion for new trial. (Reporter's Record, Vol. I, p. 1).  The motion was denied.  The Ninth Court of Appeals of Texas dismissed Pierce's appeal on June 13, 2001 for lack of jurisdiction.  Pierce did not file a petition for discretionary review in the Texas Court of Criminal Appeals.

Pierce filed a state habeas corpus application on September 28, 2001.  The Texas Court of Criminal Appeals dismissed it for lack of jurisdiction on November 7, 2001 because Pierce's direct appeal was pending.  *Ex parte Pierce,* Application No. 17,453-05 at cover. Pierce filed a second state application on March 7, 2002.  The Texas Court of Criminal

Appeals denied it without written order, on findings of the trial court, without a hearing, on August 14, 2002. *Ex parte Pierce,* Application No. 17,453-06 at cover.

On January 27, 2003, this court received Pierce's federal petition. Pierce contends that his conviction is void for the following reasons:

(1) Pierce did not enter his plea voluntarily because defense counsel coerced him into pleading guilty.

(2) Defense counsel rendered ineffective assistance by failing to:

      a.      investigate the facts of the case;

      b.      interview two potential witnesses, Joe Farmer and Susan Manning;

      c.      present a viable defense; and

      d.      discuss the case with Pierce.

(3) The trial court failed to admonish Pierce regarding the waiver of his right to appeal.

(4) By appointing appellate counsel, the trial court approved Pierce's right to appeal.

(5) The trial court abused its discretion by denying Pierce's request to withdraw his plea and denying his motion for new trial.

(6) The Board of Pardons and Paroles has altered his punishment through an *ex post facto* application of Texas Government Code §508.149.

(7) The Court of Appeals denied due process and equal protection by dismissing his appeal based on a technical error.

(8) Appellate counsel rendered ineffective assistance.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-12; Docket Entry No. 41, Amended Petition for Writ of Habeas Corpus, pp. 1-6).

On January 31, 2004, this court granted respondent's motion to dismiss the petition as barred by limitations. (Docket Entry No. 10). On March 8, 2006, the United States Court of Appeals for the Fifth Circuit granted Pierce a certificate of appealability and remanded this case for further proceedings. (Docket Entry No. 21). The Fifth Circuit determined that Pierce had established that reasonable jurists could debate whether this court correctly dismissed his federal petition as untimely. (*Id.*).

On April 21, 2006, this court directed the respondent to file a supplemental summary judgment motion addressing the merits of Pierce's petition. (Docket Entry No. 24). The respondent complied on October 2, 2006. (Docket Entry No. 47). Pierce responded on November 13, 2006. (Docket Entry No. 51).

The respondent argues that Pierce's claims 4, 6, and 7 are unexhausted and procedurally barred. Alternatively, the respondent argues that all Pierce's claims lack merit. These arguments and Pierce's responses are analyzed below.

## II.    The Applicable Legal Standards

Pierce's petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers

to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller*

*v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)
>
>> (1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state court's determination of questions of law and mixed questions of law and fact

is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to,

or involved an unreasonable application of clearly established Federal law, as determined by

the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).

A state court's decision is "contrary to" Supreme Court precedent if: (1) the state court's

conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2)
the "state court confronts facts that are materially indistinguishable from a relevant Supreme
Court precedent" and arrives at an opposite result.  *Williams v. Taylor,* 120 S. Ct. 1495
(2000).  A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably
applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends
a legal principle from [Supreme Court] precedent to a new context where it should not apply
or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*
at 1495.   In deciding whether a state court's application was unreasonable, this court
considers whether the application was "objectively unreasonable."  *Id.* at 1495; *Penry v.
Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).  Questions of fact found by the state court are
"presumed to be correct . . . and [receive] deference . . . unless it 'was based on an
unreasonable determination of the facts in light of the evidence presented in the State court
proceeding.'"  *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure,
relating to summary judgment, applies with equal force in the context of habeas corpus
cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000),
the rule applies only to the extent that it does not conflict with the habeas rules.  Section
2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be
correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed
facts must be construed in the light most favorable to the nonmoving party.  Unless the
petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as

to the state court's findings of fact, these findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Pierce is proceeding *pro se*. *Pro se* habeas petitions are construed liberally. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). Pierce's state and federal habeas petitions are broadly interpreted. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.   Procedural Bar

The respondent argues that claims 4, 7, and 8 are unexhausted and procedurally barred because Pierce did not raise them in his state applications for a writ of habeas corpus or in a petition for discretionary review.

Prisoners suing under Section 2254 are required to exhaust their claims in state court before applying for federal collateral relief. *See Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition. *Nobles v. Johnson,* 127 F.3d 409, 419-20 (5th Cir. 1997), *cert. denied,* 523 U.S. 1139 (1998) (citing *Anderson v. Harless,* 459 U.S. 4, 6-7 (1982)).

Generally, a federal habeas corpus petition that contains both exhausted claims and unexhausted claims – a mixed petition – should be dismissed to allow the petitioner to return to the state forum to present his unexhausted claim or claims. *Coleman v. Thompson,* 501 U.S. 722, 731 (1991). However, a federal court may deny an application on the merits

"notwithstanding the failure of the applicant to exhaust the remedies available in the courts

of the State." 28 U.S.C. § 2254(b)(2) (West 1997). A federal court may review the merits

of a habeas corpus application containing unexhausted claims. *See Nobles v. Johnson*, 127

F.3d 409, 420 (5th Cir. 1997) (amended § 2254(b)(2) is permissive ("[a]n application . . .

may be denied . . . ."). Because this authority is discretionary, a federal court may dismiss

if state consideration of an unexhausted claim would be appropriate.

The state habeas court summarized the allegations Pierce raised there, as follows:

> (1) Applicant received ineffective assistance of counsel;
>
> (2) Applicant's plea was coerced in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 19 of the Texas Constitution;
>
> (3) the trial court erred when it denied Applicant's motion for new trial;
>
> (4) the trial court failed to admonish Applicant in accordance with Tex. Code Crim. Proc. art. 26.13 (a) (3) in violation of the Due Process Clauses of the Fifth and Fourteen[th] Amendments to the United States Constitution;
>
> (5) "508.149 to Administration has became [sic] a Bill of Attainer [sic] by the Application of Legislative bill 508.149 and the encorauchment [sic] of it is Punishment Without a Trial For a Aggavated [sic] case or 3g offince [sic] from the Courts."

*Ex parte Pierce*, Application No. 17,453-06 at 113, Finding #1.

Pierce raised the following claims in his federal petition, without previously raising

them in his state application: the trial court gave its permission for him to appeal by

appointing him appellate counsel, (Docket Entry No. 1, Petition for a Writ of Habeas Corpus,

pp. 11-12, claim 4); the court of appeals' dismissal violated his right to due process and equal protection, (Docket Entry No. 41, Amended Petition for a Writ of Habeas Corpus, pp. 1, 3, 5-6, claim 6); and appellate counsel rendered ineffective assistance, (*id.* at 3, 5, claim 8).

These claims are procedurally barred.  Under the Texas procedural rules, Pierce would be precluded from asserting these unexhausted claims in a successive habeas petition in Texas state court. *Ex parte Carr*, 511 S.W.2d 523, 525-26 (Tex. Crim. App. 1974).  A procedural rule that acts as a bar must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).  Texas strictly and regularly applied the abuse of the writ rule when Pierce filed his habeas petition. *Emery v. Johnson*, 139 F.3d 191, 195, 201 (5th Cir. 1997); *see also Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).  Because Pierce would be precluded from asserting his unexhausted claims in a successive habeas petition in Texas state court, this court need not permit him to exhaust these claims. *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998).

Because claims 4, 7 and 8 are unexhausted and subject to procedural default, Pierce may obtain federal habeas review only if he "can show 'cause' for the default and 'prejudice attributable thereto' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986) and *Engle v. Isaac*, 456 U.S. 107, 135 (1986)); *Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994), *cert. denied*, 513 U.S. 1067 (1995).  Pierce has not shown

cause for his failure to raise these claims in his state habeas application or in a petition for discretionary review. *Coleman*, 501 U.S. at 753. Nor has Pierce demonstrated actual prejudice or that a "fundamental miscarriage of justice" will result from this court's failure to consider his unexhausted claims. *Harris*, 489 U.S. at 262. Claims 4, 7, and 8 are procedurally barred. The claims are reviewed on the merits.

## IV.   The Claim as to the Voluntariness of the Guilty Plea

Pierce complains that he did not enter his *nolo contendere* plea voluntarily because counsel gave him bad legal advice. Pierce contends that counsel predicted that he would receive life sentences on each of the three charges pending against him – aggravated assault, bond jumping and assault on a police officer. Pierce contends that his counsel said that the prosecutor would present the testimony of the victim of the alleged aggravated assault, and that of the police officer, and that the jury was likely to believe their testimony. Counsel told Pierce that all three life sentences would be stacked. *Ex parte Pierce*, Application No. 17,453-06 at 13. Pierce claims that he was coerced into pleading guilty to assault. He asserts that he is innocent of the assault charge, although he does not dispute that he had an altercation with the police officer incident to an arrest. Pierce also acknowledge that the bond jumping charge was well-founded.

Under Texas law, a plea of nolo contendere has the same effect as a guilty plea. *Matthew v. Johnson*, 201 F.3d 353, 360 n.9 (5th Cir. 2000), *cert. denied*, 531 U.S. 830, 121 (2000) (citing TEX. CODE CRIM. P. art. 27.02(5)). A federal court upholds a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent.

*Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.), *cert. denied,* 474 U.S. 838 (1985). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *see Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *Machibroda v. United States,* 368 U.S. 487, 493 (1962).

The record shows that on June 15, 2000, Pierce appeared in open court and entered his plea. (Clerk's Record, Vol. l, p. 9). The court admonished Pierce, in writing, as to the nature of the offense charged – assault on December 15, 1999 – and the punishment range – two to twenty years in prison and a $10,000 fine. (*Id.* at 6-7, 13). Pierce signed a two-part document containing the admonishments. The first part, entitled "ADMONISHMENTS," listed six separate items. Pierce placed his initials beside five of the six admonishments. (Clerk's Record, Vol. I, pp. 6-9). Pierce acknowledged admonishments that: the prosecutor's recommendation as to punishment was not binding on the court; the court would advise Pierce if it accepted any plea agreement between Pierce and the state; and the court would permit Pierce to withdraw his plea if the court rejected the plea bargain agreement. (*Id.* at 8-9).

Pierce also placed his initials by each of eleven statements in the second part of the document, entitled "STATEMENTS AND WAIVERS OF DEFENDANT." (Clerk's Record, Vol. I, pp. 9-10). These statements verified that Pierce:

    (1) was mentally competent and understood the nature of the charge against him;

    (2) understood the admonishments of the trial court;

(3) waived his right to have the trial court orally admonish him;

(4) waived the right to have a court reporter record his plea;

(5) understood the consequences should the trial court accept or refuse to accept the plea bargain;

(6) was advised of the sex offender registration requirements in the event he was convicted of a sexually-related offense;

(7) understood the consequences of his plea and, after having consulted with his attorney, requested that the trial court accept the plea;

(8) freely, voluntarily, and knowingly executed his statement in open court with the consent of his attorney; and

(9) understood the English language, had read the Admonishments, Statements, and Waivers as well as the written Stipulation and Jury Waiver or his attorney had read and explained them, and he had consulted fully with his attorney before entering his plea;

(10)  stated that, with assistance of counsel, he understood the Admonishments, Statements, and Waivers and was aware of the consequences of his plea, was mentally competent to stand trial, made his plea freely and voluntarily, waiving time to prepare for trial, and was satisfied with the representation of counsel as effective and competent; and

(11) gave up his right to a jury and his rights to the appearance, confrontation and cross-examination of witnesses and consented to the oral and written stipulations or other evidence.

(*Id*. at 9-10). By signing, Pierce stated that he understood the nature of the charge against him and the consequences of his plea.

Pierce also signed a document entitled "STIPULATION OF EVIDENCE." In that document, Pierce acknowledged that he was the person named in the indictment; that he read the admonishments and understood them; he was aware of the consequences of his plea; and he agreed that the facts and allegations in the indictment were true and correct. (Clerk's Record, Vol. I, p. 11). The stipulations included that: R.S. Moore would testify that on December 15, 1999, Pierce intentionally, knowingly, or recklessly caused bodily injury to R.S. Moore, a public servant lawfully discharging a public duty, by hitting with his hand; Pierce knew that R.S. Moore was a public servant; Pierce had previously been convicted of a felony, burglary of a habitation, on May 2, 1989 in the 351st Judicial District Court of Harris County, Texas. (Cause Number 529310). Pierce, his attorney, and the prosecutor all signed this document.

Pierce's court-appointed defense attorney also signed the plea of guilty and a statement that he had fully discussed the plea and its consequences with Pierce and believed that he had entered his plea knowingly and voluntarily. (*Id*. at 12). The court found that Pierce had voluntarily and intelligently signed each document and approved them. The court

accepted the plea, finding Pierce guilty of assault and finding the first enhancement paragraph true. Pierce received a fifteen-year sentence.

By signing each of the documents and pleading guilty, Pierce made declarations entitled to significant weight. "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). The trial court determined that Pierce had entered his plea knowingly and voluntarily after discussing the case with his attorney. (Clerk's Record, Vol. I, p. 9). The documents that make up the record are entitled to a presumption of regularity under 28 U.S.C. § 2254(e). *See Carter v. Collins*, 918 F.2d 1198, 1202 n.4 (5th Cir. 1990).

The state habeas court denied Pierce's application based on the following findings:

> 3.  On June 1, 2000, Applicant signed a Scheduling Order stating that he had reached a plea bargain with the State which specified: in exchange for Applicant's guilty plea to the offense of assault on a public servant in this cause, the State would dismiss Cause No. 97-11-01463-CR, wherein Applicant was indicted for the offense of aggravated assault, and Cause No. 98-09-01033-CR, wherein Applicant was indicted for the offense of bond jumping.
>
> 4.  On June 15, 2000, pursuant to the plea agreement, Applicant pleaded guilty to the offense of assault and stipulated to Enhancement Paragraph A.
>
> 5.  On June 15, 2000, in accordance with the plea agreement, the trial court found Applicant guilty of the offense of assault as charged in the indictment, found Enhancement Paragraph A true, and sentenced Applicant to fifteen years imprisonment. Also in accordance with the plea agreement, the court dismissed the other two cases against Applicant.

> 13.  Based on Applicant's signed Admonishments, Statements and Waivers in this cause, Applicant was satisfied with counsel's performance and was acting freely and voluntarily at the time he entered his guilty plea.

*Ex parte Pierce*, Application No.  17,453-06 at 114-15, Findings ##3-5 & 13.  The Texas Court of Criminal Appeals denied Pierce's claims.

On habeas review, a federal court is bound by the credibility choices made by the state court. *Hogue v. Johnson,* 131 F.3d 466, 505 (5th Cir. 1997).  This court presumes that the state court's findings of fact are correct if they are supported by the record.  *Loyd v. Smith,* 899 F.2d 1416, 1425 (5th Cir. 1990).  The state court record fairly supports the explicit finding that Pierce's guilty plea was voluntary.  The record shows that Pierce voluntarily entered his plea after a two week gap between announcing the plea agreement and the hearing.  The record shows that Pierce consulted with counsel before pleading.  The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States.  Pierce's claim for habeas relief based on the involuntariness of his guilty plea lacks merit, and relief cannot be granted.  28 U.S.C. § 2254(d)(1).

## V.    The Claim of Ineffective Assistance of Counsel

Pierce claims that he did not knowingly and voluntarily enter his guilty plea because he did not receive effective assistance of counsel.  As noted, Pierce asserts that counsel coerced him to plead guilty by threatening that he would receive life sentences.  Pierce also faults counsel for not conducting an adequate investigation of the facts, not presenting a

defense, and not consulting with his client.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 10).

In *Hill v. Lockhart,* 474 U.S. 52 (1985), the Supreme Court held that the test of *Strickland v. Washington,* 466 U.S. 668 (1984), applies to cases involving guilty pleas.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's actions fell below an objective standard of reasonableness; and (2) the ineffective assistance of counsel prejudiced him.  *Id.*; *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998).  A court may resolve a claim by finding either that counsel rendered reasonably effective assistance or that there was a lack of prejudice.  There is no need to reach both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court presumes that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993).  If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed."  *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).  In the context of a guilty plea, prejudice is present if there is reasonable probability that absent counsel's errors, the defendant would not have entered a guilty plea and would have insisted on a trial.  *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996); *Mangum v. Hargett,* 67 F.3d 80 (5th

Cir. 1995), *cert. denied,* 516 U.S. 1133 (1996).  A reasonable probability is a probability

sufficient to undermine confidence in the outcome.  *Strickland,* 466 U.S. at 694.

Because Pierce pleaded guilty, the relevant inquiry is whether counsel's performance

interfered with his ability to understand the nature of the charges against him and the

consequences of his plea.  Once a guilty plea has been entered, nonjurisdictional defects in

the proceedings against the defendant are waived, including all claims of ineffective

assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness

of the guilty plea.  *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.), *cert. denied sub nom. Smith*

*v. McKaskle,* 466 U.S. 906 (1984).

Pierce's counsel submitted an affidavit to the state habeas court.[1]  Counsel stated as

follows:

> My name is Frederick Minton Stover. I am currently licensed to
> practice law in the State of Texas and have been licensed since
> September of 1961.  My law practice has always been at least
> 95% limited to the criminal law area.
>
> I was originally appointed by the Judge of the 221st District
> Court to represent Mr. Roy Jackson Pierce on two felony cases
> wherein Mr. Pierce was indicted in #97-11-01463 with the
> Second Degree Felony of Aggravated Assault, enhanced by four
> prior felonies, with a deadly weapon allegation and in #98-09-
> 01033 with the Third Degree Felony of Bond Jumping.

---

[1] On August 22, 2000, counsel initially submitted an affidavit to the state court following
a hearing on Pierce's motion for new trial held on August 17, 2000.  *Ex parte Pierce,* Application
No. 17,453-06 at 101-103.   Counsel submitted a modified affidavit during state habeas
proceedings on April 16, 2002.  *Ex parte Pierce,* Application No. 17,453-06 at 83-85.  Both
affidavits are very similar and the affidavit of April 16, 2002 contains some additional text.  The
court has noted the additions to the original affidavit by underlining the text.

Thereafter, Mr. Pierce was indicted with the Third Degree Felony of Assault of a Public Servant, enhanced by four prior felonies, and I was appointed to represent Mr. Pierce in that case also.

In my first meeting with Mr. Pierce, he acknowledged to me that he was the same person named in the enhancement allegations in the two indictments, and he readily admitted his guilt in the Bond Jumping case, stating that he knew he would have been arrested on a parole violation if he had come to Court on the original assault charge. Mr. Pierce informed me that he was on parole for a 25 year sentence for Aggravated Robbery from Harris County.   He also denied his guilt in the original assault charge.

After my first meeting with Mr. Pierce, I went to the District Attorney's Office and examined the DA's file on Mr. Pierce's cases. I examined the pen packs, judgments and sentences in the enhancement allegations and was convinced that they were proper, valid and admissible. I also examined the documentation in the Bond Jumping case and felt that the State would have absolutely no difficulty in convicting Mr. Pierce of Bond Jumping.

After I was appointed on the new case of Assault on a Public Servant, I again went to the DA's office and examined the State's file. The facts revealed that Mr. Pierce had been stopped for Public Intoxication and had given the police officer a false name. After learning that the name was false, the officer attempted to arrest Mr. Pierce. At that time, Mr. Pierce and the officer became involved in a violent confirmation [sic] wherein Mr. Pierce assaulted the officer several times. Mr. Pierce told me he gave the officer a false name, and attempted to prevent being arrested because he was aware of the existing warrants for him resulting from the Bond Jumping on the old assault case.

I met with Mr. Pierce at the jail on several occasions and met with members of his family in my office on several occasions. I also accepted many calls from Mr. Pierce from the Montgomery County Jail.

I advised Mr. Pierce that he had some very large exposure on the two assault cases and that, because of the enhancement allegations, a conviction on either assault case would carry a punishment range of 25 years to life, plus a fine of up to $10,000.00. I also informed him that Mr. Jim Pruitt, the ADA in charge of his case, had indicated that he was considering reindicting Mr. Pierce on the Bond Jumping case and adding the enhancement allegations. If that happened, Mr. Pierce would receive a sentence of at least 25 years to life, plus a fine of up to $10,000, <u>if convicted of bond jumping.</u>

In none of my conversations with Mr. Pierce did I tell him that he would definitely get a life sentence <u>on any of the charges pending against him, and I certainly never told him that he would get "stacked" life sentences if he went to trial.</u>  I did tell him it would be very difficult to "beat" the Bond Jumping case <u>because I had examined the State's file and the District Clerk's file on that case and it appeared that case would be difficult, if not impossible, to win.</u>

<u>I did tell Mr. Pierce that if we tried the Assault case involving the police office, the jury would be considering the word of a police officer against that of a two time ex-convict, who had been convicted of four separate felony offenses. After reviewing the State's file, and discussing the facts of the police office assault case with Mr. Pierce, I believed that there were no other witnesses to the alleged assault other than Mr. Pierce and the police officer, and I therefore made no further investigation on that case.</u>

I did discuss the facts of all three cases with Mr. Pierce on several occasions, and after my conversations with Mr. Pierce I believed we had a decent chance of winning the original assault case.

Mr. Pierce asked me, on several occasions, if he was convicted on more than one case would the Judge stack his sentences. I told him that I did not know if the Judge would stack his sentences, but that she had the legal power to do so and that if she so desired, she certainly could stack any sentences he received.

I had numerous conversations with ADA Pruitt concerning the cases and possible dispositions. On June 1, 2000, a plea agreement between myself, ADA Pruitt and Mr. Pierce was reached, with the terms being:

(1) The Defendant would plead guilty for 15 yrs TDC on #00-01-00156 (Assault on PO);

(2) The Defendant would plead guilty for 10 yrs TDC on #97-11-01456 (Agg Assault) if the State could locate and produce their complaining witness, otherwise the State would dismiss this cause;

(3) The State would dismiss #98-09-01033 (Bond Jumping)

This agreement is reflected in a Scheduling Order, attached as Exhibit "A", which reset the case for a plea on June 20, 2000, and which was signed by myself, Mr. Pierce and ADA Pruitt on June 1, 2000 and approved by Judge Suzanne Stovall. The case had previously been set for trial on June 26, 2000, and was still set for trial on that date in case the plea fell through.

When I appeared for the plea on June 20, 2000, the Defendant informed me that he wanted another lawyer so he could get his trial postponed. I informed the Defendant that the Judge would not allow me to withdraw from his cases 6 days before we were set for trial, and that if he did not want to go through with the plea that he had previously agreed to, that we would go to trial the following Monday and let a jury decide his fate.

After realizing that he would not be able to postpone his trial, Mr. Pierce agreed to plea no contest to the non aggravated charge of Assault on a Public servant for a sentence of 15 years TDC, the other two cases were dismissed, the Defendant was given credit for all his back time and his sentence was to run concurrent with any other sentences for which he was presently serving time or on parole.

<u>I feel the record shows that I had adequately prepared for the available defenses of Mr. Pierce prior to his pleading guilty (or no contest) to the charge of assault on a public servant. I did</u>

<u>fully explain all of the legal consequences of a trial on each of the charges pending against Mr. Pierce and I know that this did not "pressure" Mr. Pierce into entering a plea of guilty or no contest to the charge.</u>

In summary, I really do not know what Mr. Pierce is complaining about. The State had a sure win on a Bond Jumping case they were going to reindict with at least two prior enhancements, they had a very good case on Aggravated Assault on a Public Servant which was indicted with four enhancements and a fairly weak case of aggravated assault with four enhancements. All of these cases carried at least a sentence of 25 years and it has been my experience in 39 years of trying criminal cases that juries usually give repeat offender more than the minimum sentence if that offender has already received the minimum type of sentence in the past. I was able to get Mr. Pierce a non aggravated sentence of 15 years on one case, (which he has testified he will be eligible for parole on in 21 months) and succeeded in getting the other two cases dismissed.

I think Mr. Pierce's real complaint is that he got caught, after being a bond jumper for almost two years, and is now having to pay the price for his actions.

*Ex parte Pierce,* Application No. 17,453-06 at 101-103.

Pierce asserts that he did not enter his plea voluntarily because counsel coerced the plea. Counsel did so by saying that a jury would convict Pierce of bond jumping and impose a life sentence; that a conviction and life sentence were likely on the assault on a public servant charge because the jury would believe the police officer; and that a conviction and life sentence on the aggravated assault charge were likely because the victim would testify. Counsel told Pierce that all three life sentences could be stacked. *Ex parte Pierce,* Application No. 17,453-06 at 13. Pierce alleges that defense counsel pressured him to accept the plea.

A defense attorney should make informed predictions about the consequences of either pleading guilty or going to trial. The Fifth Circuit has held that a defense lawyer's stern warnings about the client's chances of success at trial, the potential for prison time, and the lawyer's potential withdrawal, do not compromise voluntariness. *See United States v. Cothran*, 302 F.2d 279, 285-86 (5th Cir. 2002) (even if defendant's lawyer warned that he would almost certainly lose at trial and face a harsh sentence, these were warnings, not threats; the defendant's statements during the plea colloquy controlled); Uresti *v. Lynaugh*, 821 F.2d 1099, 1101-02 (5th Cir. 1987) (finding plea voluntary where attorney warned client that he would be lucky to get 99 years if he went to trial and threatened to withdraw if client pleaded not guilty); *Jones v. Estelle*, 584 F.2d 687, 689-90 (5th Cir. 1978) (holding that defense counsel's impatience and stern demand for an answer were not enough to make guilty plea involuntary).

The state habeas court found that the plea was not coerced.

> 13. Based on Applicant's signed Admonishments, Statements and Waivers in this cause, Applicant was satisfied with counsel's performance and was acting freely and voluntarily at the time he entered his guilty plea.

> 14. Based on Applicant's testimony at the hearing on his motion for new trial, the Court finds Applicant's credibility to be suspect.

> 15. Frederick Minton Stover is well-known to this Court as a criminal defense attorney practicing law in the courts of Montgomery County. Mr. Stover has a reputation of providing competent representation.

17. Applicant neither alleges nor presents any proof that the enhancement paragraphs were somehow improper.

18. Based on the credible affidavit of Frederick Minton Stover, counsel never told Applicant that there was a certainty he would receive a life sentence in each or any of the pending charges if he went to trial.

19. Based on the credible affidavit of Frederick Minton Stover, counsel never told Applicant that there was a certainty his sentences in the pending charges would be run consecutively if he went to trial.

*Ex parte Pierce,* Application No. 17,453-06 at 115-16, Findings ##13-15, 17-19.  The state habeas court concluded that Pierce failed to prove that he was denied effective assistance of trial counsel. *Id.* at 117, Conclusion #2.  This court presumes that the state court's factual findings are correct.  Pierce has failed to rebut this presumption.  28 U.S.C. § 2254(d)(2). The evidence shows that counsel reviewed the evidence against Pierce and advised Pierce to enter a guilty plea. *Ex parte Pierce,* Application No. 17,453-06 at 83-84.  Counsel advised Pierce about the legal options and discussed the advantages and disadvantages of each. *Id.*  Based on his review of the evidence and his knowledge of the law, counsel advised Pierce regarding the possible exposure if Pierce went to trial.

The record shows that Pierce faced a maximum sentence of life for the charge of assault on a public servant, Cause No. 00-01-00156-CR.  In Cause Number 97-11-01463, Pierce was charged with aggravated assault, a second-degree felony, enhanced with four prior felonies and with a deadly weapon allegation.  In Cause Number 98-09-01033, Pierce was charged with the third-degree felony of bond jumping.  The indictments in Cause

Numbers 97-11-01463 and 00-01-00156-CR alleged the prior convictions for burglary of a habitation in Cause Number 529310, possession of a controlled substance in Cause Number 529309, aggravated robbery in Cause Number 318896, and aggravated kidnapping in Cause Number 318893.  The prosecutor told defense counsel that he planned to reindict Pierce on the bond jumping offense, Cause Number 98-09-01033, to include the enhancement paragraphs.  In exchange for Pierce's plea of *nolo contendere* in the assault case, Cause Number 00-01-00156-CR, the prosecutor dismissed the indictments for aggravated assault and bond jumping (Cause Numbers 97-11-01463 and 98-09-01033).

If Pierce had elected to go to trial in Cause Number 00-01-00156-CR, in which he faced a sentence of twenty-five years to life, he would have also been subject to two additional charges with a punishment range of twenty-five years to life, plus fines of up to $10,000.00.  Pierce's plea-bargain agreement in Cause Number 00-01-00156-CR, with its fifteen-year sentence, enabled him to avoid the possibility of three life sentences. Considering the potential exposure, counsel's advice to accept the plea offer was well within the range of competence.

Counsel testified that he never told Pierce that he would definitely get a life sentence on any of the charges pending against him or that the life sentences would definitely be "stacked." *Ex parte Pierce,* Application No. 17,453-06 at 84.  Pierce's own allegations and counsel's affidavit show that counsel was warning him about what could happen at trial and sentencing.  Such warnings did not compromise the voluntariness of Pierce's plea.

The respondent's summary judgment evidence shows that after consulting with counsel, he freely and voluntarily pleaded guilty.  (Clerk's Record, Vol. I, p. 9).  Pierce stated in writing that he had discussed the contents of the court's written admonishments with his attorney and understood them, and he was satisfied with the representation trial counsel had provided.  (*Id.* at 9-10).  These documents are entitled to a presumption of regularity under 28 U.S.C. § 2254(e).  *Carter v. Collins,* 918 F.2d 1198, 1202 n.4 (5th Cir. 1990).  The record shows that counsel's advice to Pierce was based on well-informed strategic decisions well within the range of practical choices not to be second-guessed.  The state court's decision was a reasonable application of the law to the facts and was not contrary to clearly established federal law as determined by the Supreme Court of the United States.  Relief cannot be granted under 28 U.S.C. § 2254(d)(1) on the claim that the guilty plea was coerced.

The record shows that counsel's performance did not interfere with Pierce's ability to understand the nature of the charges against him and the consequences of his plea.  Once a guilty plea has been entered, nonjurisdictional defects in the proceedings against the defendant are waived, including all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith,* 711 F.2d at 682.  Pierce's claims that his counsel failed to conduct an adequate investigation of the facts, failed to call witnesses, failed to present a defense, and failed to meet with Pierce, do not meet the criteria necessary to overcome waiver or provide a basis for habeas relief on the merits.

Pierce complains that counsel believed the prosecutor's file was "true" and made no effort to investigate the case.  To establish his failure to investigate claim, Pierce must allege with specificity what a proper investigation would have revealed and how it would have benefitted him.  *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  Pierce must also show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Pierce states that witnesses and a surveillance tape from the gas station "were later discovered."  (Docket Entry 51, Petitioner's Response, p. 3).  Pierce states that he did not know about this evidence at the time of trial.  (*Id.*).  Pierce states that counsel could have discovered the videotape and the witnesses if he had conducted a proper investigation.  (Docket Entry 51, Petitioner's Response, p. 12).

The reasonableness of an attorney's pretrial investigation into possible exculpatory evidence and witnesses depends on the facts known by or available to counsel at the time he made the decision whether to conduct further investigation, interview potential witnesses, or call them to testify.  *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003).  Pierce does not explain how counsel should have discovered the existence of these witnesses and surveillance tape.  In his affidavit, counsel explained that he reviewed the State's file and discussed the facts of the assault on a public servant case with Pierce.  Counsel had no basis to believe that there were other witnesses to the alleged assault besides Pierce and the police officer.

Pierce argues that the surveillance tape and additional witnesses could prove his innocence of the assault charge. In support of this argument, Pierce offers the affidavit of Joe Farmer. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, Ex. 2, p. 1). After his first state application was dismissed for lack of jurisdiction, Pierce filed a second habeas application on March 7, 2002. The Texas Court of Criminal Appeals denied it without written order, on findings of the trial court, without a hearing, on August 14, 2002. *Ex parte Pierce,* Application No. 17,453-06 at cover. Farmer executed his affidavit on November 25, 2002. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 18). In the affidavit, Farmer stated that on December 15, 1999, he was at the intersection of 1485 and Firetower Road. He saw a police car on the side of the road and saw Pierce facing the police car. The police officer was standing behind Pierce. The police officer put one handcuff on Pierce, who pulled away. The police officer started hitting Pierce, knocking him to the ground. The police officer sprayed Pierce and handcuffed him. Pierce did not try to strike the police officer. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, Ex. 2, p. 1).

The state habeas court found that:

> 20. Based on the credible affidavit of Frederick Minton Stover, Applicant and the assaulted police officer were the only witnesses to the incident that resulted in the assault charge to which Applicant pleaded guilty.
>
> 21. Applicant testified that he never informed his trial counsel of any witnesses who could be relevant to his defense.
>
> 22. Applicant does not identify any witnesses whom trial counsel should have interviewed, nor does he allege what useful testimony could have been elicited from such witnesses.

*Ex parte Pierce,* Application No. 17,453-06 at 116.  The record does not rebut the state court finding that Pierce's counsel had no basis to believe that there was any witness such as Farmer.  The state court record fairly supports the explicit findings that counsel rendered effective assistance in conducting the investigation.

Pierce also asserts that counsel did not meet with him to discuss the case.  In support of this claim, Pierce offers records from the Montgomery County Jail showing that counsel visited Pierce on June 1, 2000 from 8:53 to 9:10 and on June 6, 2000 from 1:30 to 2:15.[2] (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 26).  Pierce also offers the affidavit of his sister, Susan Manning.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, pp. 19-25).  This affidavit was executed on November 25, 2002, after Pierce's second state habeas application was denied by the Texas Court of Criminal Appeals. Manning stated that when Pierce advised her of a hearing, she traveled thirty miles to be present.  On at least three or four occasions, defense counsel did not appear at these hearings. A prosecutor's assistant told Manning to call Pierce's counsel and find out why counsel was not appearing for hearings and not keeping Pierce apprised of changes in the schedule. When Manning met with defense counsel to ask why he had missed so many hearings, counsel spoke condescendingly to her and made her cry.  Manning told defense counsel that she had witnesses who saw Pierce pull away from the officer, but counsel told her that he

---

[2] Pierce states that phone records support his claim.  (Docket Entry 51, Petitioner's Response, p. 10).  Although this court carefully reviewed Pierce's pleadings and attachments, the court was unable to locate these records.

28

knew what he was going to do and that he did not need witnesses. Manning asked counsel if he would go visit Pierce in jail. Counsel replied that he was not "babysitting" Pierce. Manning stated that she was afraid to question counsel about his handling of Pierce's case for fear that he would retaliate by refusing to help Pierce. (*Id.* at 21).

In his affidavit, counsel testified that on several occasions, he met with Pierce at the jail and met with members of Pierce's family in his office. Counsel also accepted many calls from Pierce from the Montgomery County Jail. The state habeas court credited counsel's statement and found that counsel spent significant time reviewing the State's and District Clerk's files and bargaining for a favorable plea offer. *Ex parte Pierce,* Application No. 17,453-06 at 115, Finding #16. The state court records are consistent with this finding. The record shows that Pierce was indicted on January 11, 2000. *Ex parte Pierce,* Application No. 17,453-06 at 119. Pierce entered his plea on June 15, 2000. The records offered by Pierce from the Montgomery County Jail show that defense counsel visited Pierce at least twice in June 2000. The records do not purport to list every visit between Pierce and counsel in June 2000, much less every visit counsel had with Pierce from the date the indictment in Cause Number 00-01-00156-CR on January 11, 2000 to when Pierce entered his plea in June 2000.

Pierce also complains that counsel failed to develop and present a viable defense. Pierce argues that he only tried to turn and run away from the police officer, not assault him. Pierce asserts that the police officer knocked him onto the hood of the car, sprayed him with mace, handcuffed him, put him in the police car, and transported him to jail. *Ex parte Pierce,*

Application No. 17,453-06 at 13.  Pierce argues that he should have been charged with resisting arrest, in violation of Texas Penal Code § 38.03, which provides:

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.
>
> (b) It is no defense to prosecution under this section that the arrest or search was unlawful.
>
> (c) Except as provided in Subsection (d), an offense under this section is a Class A misdemeanor.
>
> (d) An offense under this section is a felony of the third degree if the actor uses a deadly weapon to resist the arrest or search.

TEXAS PENAL CODE § 38.03.

Pierce was charged and convicted of assault on a public servant, in violation of Texas Penal Code § 22.01, which provides:

> (a) A person commits an offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

(1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant;

. . .

(d)  For purposes of Subsection (b), the actor is presumed to have known the person assaulted was a public servant or a security officer if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant or status as a security officer.

TEXAS PENAL CODE § 22.01.

Pierce maintains that, at most, he was guilty of resisting arrest and not assaulting the police officer.  Pierce is apparently arguing that counsel should have developed this defense instead of negotiating a plea bargain.  Defense counsel stated in his affidavit that he reviewed the State's file and learned Pierce had been stopped for public intoxication and had given the police officer a false name. After learning that the name was false, the officer attempted an arrest.  Pierce and the officer became involved in a violent confrontation, during which Pierce assaulted the officer several times.  Pierce told counsel that he gave the officer a false name and attempted to resist arrest because he knew about the existing warrant for bond jumping on the prior assault case.

Pierce was charged with the second-degree felony of aggravated assault, enhanced with four prior felonies and with a deadly weapon allegation; the third-degree felony of bond

jumping; and the third-degree felony of assault of a public servant, enhanced by four prior felonies. Counsel learned that the prosecutor was considering reindicting Pierce on the bond jumping case and adding the enhancement allegations. Based on his conversations with Pierce, counsel believed that he had a decent chance of winning the assault on a public servant case. However, as counsel told Pierce, if he elected to proceed to a trial on the assault case involving the police officer, the jury would be considering the word of a police officer against that of an ex-convict who had been convicted of four separate felony offenses.

The record does not support Pierce's argument that counsel was deficient for not seeking to challenge the assault indictment or for other aspects of the defense strategy. The state habeas court explicitly found that counsel rendered effective assistance. Pierce has also failed to show that there was a reasonable probability that but for counsel's alleged unprofessional errors, Pierce would not have entered a guilty plea. Pierce received a fifteen-year prison term when he pleaded guilty. A trial exposed him to three prison sentences ranging from twenty-five years to life. In the event of a trial, a jury would have learned about Pierce's lengthy criminal history, including convictions for possession of a controlled substance, aggravated robbery, and aggravated kidnapping.

On habeas review, the state trial court found that Pierce had voluntarily entered his guilty plea. *Ex parte Pierce,* Application No. 17,453-06 at 115, Finding #13. The Texas Court of Criminal Appeals denied habeas relief. The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the

United States.   28 U.S.C. § 2254(d)(1).   Pierce's claim for habeas relief based on the ineffective assistance of counsel lacks merit.

## VI.   The Claim Based on Trial Court Errors

Pierce complains of various trial court errors.   To the extent these claims are based on a violation of state law, they cannot be reviewed in a federal habeas corpus proceeding. A state prisoner seeking federal court review of his conviction under 28 U.S.C. § 2254 must assert a violation of a federal constitutional right.   *Lawrence v. Lensing,* 42 F.3d 255, 258 (5th Cir. 1994).   Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented.   *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).   The issue before this court is not whether the Texas courts properly applied state-law principles during Pierce's guilty plea or postconviction proceedings, but whether Pierce's federal constitutional rights were violated.   Even considering the claims of state-law violations, this court finds that Pierce's claims based on trial court errors are meritless.

### A.   The Claim of Failure to Admonish About the Waiver of Appeal

Pierce complains that the trial court failed to admonish him as to the effect of his plea on his right to appeal the conviction, as required by Texas Code of Criminal Procedure 26.13.   Pierce argues that the failure by the trial court caused him to enter his plea involuntarily.

As noted, Pierce signed a two-part document containing the admonishments. The first part, entitled "ADMONISHMENTS," listed six separate items.   Pierce placed his initials

beside the first, second, third, fourth, and sixth admonishments. (Clerk's Record, Vol. I, pp.

6-9). The fifth admonishment provided that:

> if the punishment assessed by the Court does not exceed the
> punishment recommended by the prosecutor and agreed to by
> you and your attorney, the Court must give its permission to you
> before you may prosecute an appeal on any matter in this case
> except for those matters raised by you by written motion filed
> prior to trial;

(*Id.* at 9).

Pierce also placed his initials by each of eleven statements in the second part of the

document, entitled "STATEMENTS AND WAIVERS OF DEFENDANT." (Clerk's Record,

Vol. I, pp. 9-10). One of these statements – relating to deferred adjudication – was crossed

out using a large "x". This statement did not apply. Pierce did not initial this statement.

(Clerk's Record, Vol. I, p. 9). The fifth admonishment, relating to the waiver of the right to

appeal, did not contain any type of marking indicating that it did not apply to Pierce. (Clerk's

Record, Vol. I, p. 9). Pierce did not make any markings on the fifth admonishment, such as

crossing it out, so as to suggest that he was opposed. It appears that Pierce inadvertently

failed to place his initials beside this admonishment.

The state habeas court found that:

> 23. The record in this case does not reflect that the trial court
> admonished Applicant of the fact that if the punishment
> assessed did not exceed the punishment recommended by the
> prosecutor and agreed to by Applicant and his attorney, the trial
> court would have to give its permission to Applicant before he
> could prosecute an appeal on any matter other than those raised
> by written motions prior to trial.

> 24.    Based on Applicant's pleadings in support of his
> application for writ of habeas corpus, at the time he pleaded
> guilty, Applicant was aware of the fact that if the punishment
> assessed did not exceed the punishment recommended by the
> prosecutor and agreed to by Applicant and his attorney,
> Applicant would be prohibited from prosecuting an appeal on
> any matter other than those raised by written motions prior to
> trial.

*Ex parte Pierce,* Application No. 17,453-06 at 116.

The state habeas court concluded that:

> Applicant fails to prove that he was harmed under Texas Rule
> of Appellate Procedure 44.2(b) by the trial court's failure to
> admonish him regarding the waiver of his right to appeal in
> accordance with article 26.13(a)(3) of the Texas Code of
> Criminal Procedure.

> This Court concludes beyond a reasonable doubt that the trial
> court's failure to admonish Applicant regarding the waiver of
> his right to appeal in accordance with article 26.13(a)(3) of the
> Texas Code of Criminal Procedure did not contribute to the
> conviction or punishment.

*Ex parte Pierce,* Application No. 17,453-06 at 117.

Pierce has not shown that if he had known that a guilty plea would limit his right to

appeal, he would not have entered his plea of nolo contendere and would have proceeded to

trial.  The state court's decision to deny relief was not contrary to clearly established federal

law as determined by the Supreme Court of the United States.  Pierce's claim for habeas

relief based on this basis lacks merit.

**B.** **The Claim that the Court Improperly Denied Pierce's Motion to Withdraw His Plea and Motion for New Trial**

Pierce complains that the trial court abused its discretion in denying his motion for new trial. Pierce entered his plea of nolo contendere on June 15, 2000. On June 16, 2000, Pierce wrote a letter motion to withdraw his plea, which was filed on June 22, 2000. (Clerk's Record, Vol. I, pp. 16-17). Pierce complained that his counsel coerced him to enter his plea by saying that he would receive a life sentence. On June 27, 2000, the trial court denied Pierce's *pro se* request. (*Id.* at 19).

A defendant may withdraw his plea as a matter of right, without assigning a reason, until judgment is pronounced or the case is taken under advisement by the trial court. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979). If, however, a defendant desires to withdraw his guilty plea after the court has taken the case under advisement, withdrawal is within the court's discretion. *Jagaroo v. State*, 180 S.W.3d 793, 802 (Tex. App. - Houston [14th Dist.] 2005, pet. ref'd). After a trial court has admonished a defendant, received the plea and evidence, and passed the case for a presentence investigation, the case has been taken under advisement. *Id.* An abuse of discretion is shown only when the trial court's ruling lies outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

Pierce does not contend that he sought to withdraw his guilty plea until after his case was taken under advisement. He could not withdraw his plea as a matter of right. Because Pierce filed his motion to withdraw his guilty plea after judgment and sentence, it is treated

as a motion for new trial. *See* TEX. R. APP. P. 21.1 (defining a new trial as "the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt"); *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim. App. 1992) (stating order granting a motion to withdraw a guilty plea has precise effect of granting a new trial). A trial court is given wide latitude in deciding whether to grant or deny a motion for new trial. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). An appellate court reviews a trial court's ruling on a motion for mistrial and motion for new trial using an abuse-of-discretion standard of review. The reviewing court considers the evidence in the light most favorable to the trial court's ruling. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The reviewing court must decide whether the trial court's decision was arbitrary or unreasonable. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). When, as here, the trial court makes no findings of fact regarding the denial of a motion for new trial, the reviewing court must "impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported in the record." *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

The trial court conducted a hearing on Pierce's motion for new trial on August 17, 2000. (Reporter's Record, Vol. I, Motion for New Trial, pp. 1-21). Pierce testified that he had been convicted of burglary of a habitation, possession of a controlled substance, aggravated robbery, and aggravated kidnapping. (*Id.* at 5-6). Pierce testified that his counsel

had advised that he faced a sentence range of 25 years to life.  On June 15, 2000, counsel had told Pierce that he would not get another attorney and the trial was set for the following week.  Counsel further told Pierce that he would receive a life sentence on the aggravated assault, a life sentence on the failure to appear, and a life sentence on the assault on a police officer and that the sentences could be stacked.  Pierce denied that counsel ever discussed the facts of the case.  (*Id.* at 8).  Pierce was offered a fifteen-year sentence, to be served concurrently with the 25-year sentence he was already serving.  (*Id.* at 9).  Pierce testified that he pleaded no contest to assault because counsel said that he would receive three life sentences.  When Pierce pleaded guilty to assault, the prosecutor dismissed the other two suits.  (*Id.* at 11).  Pierce received the bargained for fifteen-year sentence.

Pierce testified that he had witnesses to the events that led to his being charged with assault on a public servant.  Pierce admitted that he had never told counsel about these witnesses but blamed it on counsel's failure to ask Pierce about the case.  (*Id.* at 12).  Pierce testified that he kept insisting that he had not committed a crime, but counsel insisted that Pierce could not win.

Pierce had told the lawyer representing him at the hearing that James Williams, an inmate, witnessed the exchange between Pierce and counsel.   The lawyer told Pierce that he had called James Williams to the hearing on motion for new trial.  The lawyer told Pierce that he had spoken with James Williams and concluded his testimony would not be helpful.  Pierce waived his right to call Williams to testify.  (*Id.* at 14).

On cross-examination, Pierce testified that he understood the difference between an aggravated and nonaggravated offense. An inmate serving an aggravated sentence must serve at least half his sentence before being eligible for release to parole. Pierce testified that he pleaded guilty to assault on a public servant and that it was a nonaggravated offense. (*Id.* at 15). Pierce acknowledged that two other cases had been dismissed and that one of them was an aggravated offense. (*Id.* at 16).

Pierce addressed the court and asked why his requests to speak to the court on prior occasions had been denied. The judge explained that she thought Pierce had an excellent criminal defense attorney. The court observed that two offenses had been dismissed, including an aggravated offense, noting that "it's not that bad of a deal." (*Id.* at 19). The court noted that Pierce had also been well represented at the motion for new trial hearing.

The motion for new trial was overruled by operation of law on August 29, 2000. Taking into account the evidence presented at the motion for new trial hearing and counsel's affidavit, the trial court was well within its discretion in refusing to grant a new trial. Pierce's argument does not overcome the evidence as to the basis for his guilty plea. Nor does Pierce show that the deficiencies he claims support a claim of ineffective assistance.

The state habeas court concluded that Pierce had failed to prove that the trial court abused its discretion in deciding not to grant his motion for new trial. *Ex parte Pierce,* Application No. 17,453-06 at 117, Conclusion #5. The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of

the United States.  Pierce's claim for habeas relief based on trial court errors lacks merit, and relief cannot be granted.  28 U.S.C. § 2254(d)(1).

## VII.   The Bill of Attainder Claim

Pierce asserts that the Texas Board of Pardons and Paroles altered his punishment by misinterpreting Texas Government Code § 508.149.  He complains that the Board is interfering with the plea agreement between Pierce and the State of Texas, in violation of the constitutional prohibition against bills of attainder.  U.S. Const. art. 1, § 9, cl. 3.

Pierce argues that section 508.149 is a bill of attainder.  At the time of Pierce's offense, December 1999, Texas Government Code § 508.149 provided, in relevant part, that an inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of:

> (4)  a first degree felony or a second degree felony under Section 20.04, Penal Code [Aggravated Kidnapping]; . . .
>
> (11) a first degree felony under Section 29.03, Penal Code [Aggravated Robbery];

Tex. Gov't Code § 508.149 (Vernon 1998).

Pierce was serving a twenty-five year sentence for aggravated robbery in Cause Number 318896.  (Clerk's Record, Vol. I, p. 3).   Pierce was also serving a twenty-five year sentence for aggravated kidnapping in Cause Number 318893.  (*Id*. at 4).  Pierce was ineligible for mandatory supervision according to the mandatory supervision statute in effect when he committed the underlying offense of assault on a public servant.